## APPEAL OF RUCKMAN COAL CO.

Docket No. 4277.   Decided November 16, 1926.

1. A note receivable of a stockholder *held* to represent a *bona fide* indebtedness to the corporation and should be included in invested capital.

2. The earned surplus of corporations included in a consolidated return should be reduced by an operating deficit of one of the corporations in the group in excess of its own earned surplus, earned during a year when a consolidated return is required by statute.

*Attilla Cox, Esq.*, and *E. J. Wells, Esq.*, for the petitioner.
*Percy S. Crewe, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency of $3,820.98 in income and profits taxes for 1920. The taxpayer alleges error on the part of the Commissioner in excluding from the consolidated invested capital a note receivable and an account receivable, and by reducing the consolidated earned surplus by an operating deficit of an affiliated company in excess of its own earned surplus.

### FINDINGS OF FACT.

The taxpayer is a Kentucky corporation with its principal office in Providence.

The taxpayer, during the taxable year involved and also during 1919, was affiliated with the Highland Mining Co. and the Clover Creek Coal Co. The officers of these companies and their stockholdings were as follows:

| | Shares. |
|---|---|
| Ruckman Coal Co.: | |
|     D. J. Ruckman, president | 58¼ |
|     F. V. Ruckman, vice president | 61¼ |
|     A. J. Ruckman, secretary and treasurer | 62¼ |
| Highland Mining Co.: | |
|     A. J. Ruckman, president | 57¾ |
|     F. V. Ruckman, vice president and treasurer | 54¾ |
|     D. J. Ruckman, secretary | 57¾ |
| Clover Creek Coal Co.: | |
|     F. V. Ruckman, president | 24½ |
|     A. J. Ruckman, vice president | 25½ |
|     D. J. Ruckman, secretary and treasurer | 24½ |

Prior to 1918, F. V. Ruckman became indebted to the Highland Coal Co., and about January, 1918, gave his note to the company in the amount of $43,000. This represented substantially all net profits of the company. Ruckman borrowed the funds from the company and intended to repay the amount. The note has not been paid and is still held by the company and listed among its assets.

During a period of years D. J. Ruckman made withdrawals from the taxpayer company in excess of salary, and in January, 1920, was indebted to it in the amount of $12,235.52, which the taxpayer carried on its books as an account receivable. On January 1, 1918, the account amounted to $34,030.85. From time to time payments were made which reduced it to $12,235.52 as of January 1, 1920.

Both F. V. Ruckman and D. J. Ruckman carried life insurance in the amount of $25,000, payable to their estates, for the purpose of making provision for liquidating any indebtedness that might exist at the time of their death.

Both the note and the account above stated were accounts receivable, and as such are a part of invested capital.

As of December 31, 1919, the Clover Creek Coal Co. had an operating deficit of $18,183.34. The earned surplus of the other two companies exceeded this amount. The Commissioner reduced the earned surplus of these two affiliated companies by the operating deficit of the third affiliated company in determining the consolidated invested capital.

OPINION.

TRAMMELL: There are three questions involved in this appeal, all of which affect invested capital. The first is whether invested capital should be reduced by excluding a note given by F. V. Ruckman to the Highland Coal Co. in the amount of $43,000. The second is whether the amount of indebtedness of $12,235.52, alleged to be owing by D. J. Ruckman to the Ruckman Coal Co., should be excluded from invested capital; and the third question is whether the earned surplus of the Ruckman Coal Co. and the Highland Mining Co. should be reduced by the operating deficit of the Clover Creek Coal Co. to the extent that it exceeds the earned surplus of that company.

In determining whether the note of F. V. Ruckman to the Highland Coal Co. and the account set up on the books as an indebtedness of D. J. Ruckman to the Ruckman Coal Co. were actual assets of the respective companies or were withdrawals of earnings and profits or payments to those individuals, we must look to and consider all the facts and circumstances in connection therewith.

The amount of the note given by F. V. Ruckman represented substantially all the profits of the Highland Coal Co. F. V. Ruckman, however, did not own in excess of one-third of the stock of

that company. The record does not disclose the exact amount of stock owned by him. The other stockholders did not receive any portion of the profits. If it were not intended that the said Ruckman should repay the amounts secured by him from the corporation for which the note was given, the other stockholders who owned at least two-thirds of the stock would receive practically nothing on their investment in the corporation. The corporation listed the note among its assets and included it as a note receivable which was reflected in its invested capital.

It also appears that D. J. Ruckman made withdrawals from the Ruckman Coal Co. in excess of his salary over a period of years. On January 1, 1918, the amount received from the company by D. J. Ruckman amounted to $34,030.85. From time to time he made payments thereon to the corporation so that on January 1, 1920, according to the books of the company, he owed it $12,235.52. The Ruckman Coal Co. at all times carried the amounts on its books as accounts receivable. While the record does not disclose the exact stock ownership of all the stockholders or the total capital stock outstanding, it does appear that D. J. Ruckman did not own as much as one-third of the stock. The fact that he had paid something on the account and had reduced it by continually making payments thereon, indicates that both he and the company treated it as an actual liability and not as withdrawals of profits or as payment for services.

The circumstances surrounding the account of D. J. Ruckman should be taken into consideration in connection with the note of F. V. Ruckman. It would seem unreasonable that D. J. Ruckman would be permitted to make withdrawals from the Ruckman Coal Co. and be required to repay the same if F. V. Ruckman were not required to repay the amounts withdrawn by him. If D. J. Ruckman was actually indebted to the corporation for his withdrawals, the same situation would seem to exist with respect to F. V. Ruckman. F. V. Ruckman owned more stock in the Ruckman Coal Co. than D. J. Ruckman, and D. J. Ruckman owned more stock in the Highland Mining Co. than F. V. Ruckman. Both of the transactions should be considered together. It would seem unreasonable that other stockholders would permit a stockholder in a corporation to withdraw earnings and profits in which they did not participate, especially when the other stockholders owned more stock than the individuals receiving from the corporation the amounts referred to.

It also appears from the evidence that both of the Ruckmans took out life insurance on their lives for the purpose of making provision for liquidating any indebtedness that might exist at the time of their death.

The facts and circumstances lead us to believe that the note and the account receivable given to the respective corporations were actual existing obligations for the respective amounts during the years involved.

This leads us to the remaining question, that is, whether the earned surplus of two of the affiliated companies should be reduced by the operating deficit of the other affiliated company in excess of its own earned surplus. There is no evidence before the Board as to when the deficit occurred or whether the corporations were affiliated during the period of operation in which it was sustained. The Commissioner has reduced the earned surplus of the entire group of corporations by the deficit of one company in excess of its own earned surplus.

In the absence of any evidence as to when the deficit occurred, or whether the corporations were affiliated during the period when it was incurred, we are not called upon to determine whether in every case an operating deficit of one of a group of affiliated companies must be set off against the earned surplus of other corporations in the group. We are clearly of the opinion that any operating deficit in excess of its earned surplus, incurred by one corporation during the years when the corporations were required to file a consolidated return, is to be deducted from the earned surplus of any corporation in the group. See *Appeal of Valdosta Grocery Co.*, 2 B. T. A. 727. If this were not true, one of the principal purposes of consolidated returns would be defeated and the invested capital could be manipulated within the group of corporations in such a way as artificially to increase the invested capital. We express no opinion as to what would be the result if the deficit had been shown to have occurred when the corporations were not required or permitted to file a consolidated return.

> *Judgment will be entered on 10 days' notice, under Rule 50.*